# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **LEO SUGG,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VIRTUSA,**<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 18-8036 (GC)(JTQ)<br><br><br>**MEMORANDUM OPINION**<br><br>**AND ORDER** |

This decision addresses Defendant Virtusa's ("Defendant") Motion to Strike the Reply Report of Plaintiff's Statistical Expert David Lang, Ph.D. ECF No. 135. The Court has fully reviewed the submissions of the parties and decides the motion without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's Motion is GRANTED.

## I.   BACKGROUND

The underlying dispute arises out of a class action lawsuit in which Plaintiff alleges that Defendant has engaged in and promoted racially discriminatory hiring, staffing, and promotion practices favoring employees of South Asian descent. Plaintiff seeks to certify a class of non-South Asian applicants, employees, and former employees of Defendant who allegedly suffered from the discriminatory conduct and practices. Plaintiff avers that the appropriate classes are: (1) all current and former

1

non-South Asian employees of Virtusa who were not promoted; (2) all former non-South Asian employees of Virtusa who were involuntarily terminated; and (3) all non-South Asian individuals who applied for employment at Virtusa and were not hired.

Plaintiff retained David Lang, Ph.D. ("Dr. Lang") to serve as his statistical expert witness. ECF No. 139 ("Opp. Br.") at 2. Dr. Lang's initial report, which was served on July 29, 2024, used data provided by Defendant as to employee race, nationality, or both. *Id.* at 2-3. Based upon this data, Dr. Lang opined that: (1) 89.2% of hired employees were of Asian descent; (2) white employees were significantly less likely to receive a high appraisal score for promotion purposes; and (3) white employee terminations were 17.7% involuntary compared to 8.1% of Asian employee terminations. ECF No. 139-2 at 5-10. From these findings, Dr. Lang concluded that "there is significant evidence that non-Asian employees are being discriminated against at Virtusa in terms of hiring, employee ratings and promotions, and through terminations." *Id.* at 16.

Plaintiff Leo Sugg ("Decedent") passed away on September 3, 2024. On September 18, 2024, the matter was stayed. Thereafter on March 21, 2025, Decedent's wife, Gwynne Sugg, was substituted in as Plaintiff by way of Court Order. ECF No. 129.

On February 20, 2025, Defendant deposed Dr. Lang. Opp. Br. at 2. At the deposition, Defendant questioned Dr. Lang about Table 9 in his report, which concerns involuntary terminations. ECF No. 139-3 at 127:24-128:21, 129:22-130:2. Defendant's counsel noted that the Table reflected only 11 involuntary terminations

of white employees over a ten-year period. *Id.* Plaintiff alleges that after the deposition, Dr. Lang recognized that there might have been an error in his terminations analysis and thus Dr. Lang decided to revisit the data. Opp. Br. at 5.

Defendant retained Paul White, Ph.D. ("Dr. White")—a Labor Economist—to rebut Dr. Lang's report and testimony. Defendant served Plaintiff with Dr. White's report on March 10, 2025. ECF No. 135 ("Mov. Br.") at 2. And on May 5, 2025, Plaintiff served Dr. Lang's reply report. It is this report that is the subject of the instant motion. *Id.*

Upon a closer look, Dr. Lang apparently discovered subsets of employee populations (within Defendant's data) that he left out of his report and analyses—a mistake he chose to fix in his reply report. Opp. Br. at 5. In making his original terminations analysis, Dr. Lang identified and studied 103 terminated (either voluntarily or involuntarily) white employees. ECF No. 139-2 at 11. However, in his reply report, Dr. Lang identified and studied 618 terminated white employees and drew statistical conclusions based on this number. ECF No. 139-5 at 4-5, 16. With respect to Dr. Lang's analysis of employee promotion data, Dr. Lang originally used an employee population of 1,964 individuals. No. 139-2 at 8. That sample size ballooned in his reply report to a total of 6,056 individuals. ECF No. 139-5 at 11. These two changes seemingly resulted in a substantial increase in the proposed putative class sizes. *See* ECF No. 139-5 at 11, 16.

On May 15, 2025, Defendant sent a letter to Plaintiff pursuant to Local Civil Rule 16.1 and 37.1, demanding that Plaintiff either withdraw Dr. Lang's reply report

3

or alternatively agree to a reasonable compromise that would (1) allow Defendant to re-depose Dr. Lang on his new analyses, (2) produce Dr. Lang's work papers in their entirety, (3) permit Dr. White to submit a supplemental report responding to Dr. Lang's new findings and opinions, and (4) adjust the schedule for class certification briefing to account for any additional, necessary discovery stemming from Dr. Lang's reply report. Mov. Br. at 4. Plaintiff agreed to the second and third requests but refused the others. *Id.* This motion followed.

## II.    LEGAL STANDARD

### A. Motion to Strike Under Rule 26

Pursuant to Rule 26(a)(2)(A), a party must disclose the identity of any witness it may use at trial. If a party intends to offer expert testimony, the party is required to disclose the expert and provide a written report for each expert, including "a complete statement of all opinions the witness will express and the basis for and reasons for them." *Haskins v. First Am. Title Ins. Co.*, 2013 U.S. Dist. LEXIS 138041, at *5 (D.N.J. Sep. 26, 2013) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Should a scheduling order permit rebuttal or reply reports, a party may provide such testimony only if the evidence is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Although rebuttal and reply reports may cite to new evidence if the evidence is "offered to directly contradict or rebut the opposing party's expert . . .[,]" reports that discuss the same subject matter without directly contradicting the contents of an adversary's

4

report "do not qualify as proper rebuttal." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. 2013).

Importantly, it is settled law that "rebuttal cannot be used to correct a party's case-in-chief." *Haskins*, 2013 U.S. Dist. LEXIS 138041, at \*7. Put differently, if the rebuttal or reply contain new opinions or information contradicting the initial report, the report should be stricken. *See generally Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004); *Reckitt Benckiser, Inc. v. Tris Pharma, Inc.*, 2011 U.S. Dist. LEXIS 146631, at \*9, \*29 (D.N.J. Dec. 21, 2011) (affirming magistrate judge's decision to strike a supplemental report relying on and including substantially new data outside of the scope of the expert's original report). However, if the report contains "an elaboration of and is consistent with" the opinions and issues discussed in the original report, the rebuttal need not be stricken. *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 284-85 (W.D. Pa. 2009).

### B. Motion to Strike Under Rule 37

Rule 37 of the Federal Rules of Civil Procedure "governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). Specifically, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to, or instead of, this sanction, "on motion and after giving an opportunity to be heard[,]" a court may also "order

payment of the reasonable expenses, including attorney's fees, caused by the failure," "inform the jury of the party's failure," or impose other "appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

### III. ANALYSIS

Defendant argues that Dr. Lang's reply report should be stricken because it is neither a proper reply report nor a proper supplemental report under Rule 26(e). Mov. Br. at 5-6. Defendant submits that Dr. Lang's reply report contains significant deviations from the original report. *Id.* Among other things, Dr. Lang's reply report relies upon several thousand new individuals and advances entirely new opinions and statistical analyses from this population. *Id.* at 1, 6. Defendant further argues that the report should be stricken under Rule 37(c) because the delayed disclosure of Dr. Lang's alleged mistake in population sets was neither justified nor harmless. *Id.* at 8-10.

In opposition, Plaintiff argues that the report is a proper reply report. Opp. Br. at 17. Plaintiff maintains that Dr. Lang addressed numerous critiques asserted in the rebuttal report and only changed the population sets after recognizing his earlier mistake *Id.* at 13. Plaintiff contends that Dr. Lang made no changes to his methodology and "simply re-ran his prior analyses, using the corrected dataset[.]" *Id.* at 7, 12. With respect to Rule 37, Plaintiff contends that because the reply report and analyses are proper, Rule 37 sanctions are unavailable and inappropriate. *Id.* at 20.

#### A. Reply Report Under Rule 26(a)(2)(D)(ii)

6

Here, the Court sides with Defendant and finds that Dr. Lang's report does not constitute a proper reply. Nothing Plaintiff argues changes this conclusion.

Plaintiff tries to make much of the fact that Dr. Lang's report addresses certain of Dr. White's criticisms. Though true, that alone does not render the report a proper "reply," nor does it accurately characterize the report, since less than a quarter of it actually address Dr. White's critiques. *See* ECF No. 139-5 at 4-7. And even those sections frequently discuss, if not rely, on Dr. Lang's "supplemental analyses." *Id.* at 4-6.

The point of this new report is obvious: Dr. Lang and Plaintiff seek to establish a larger potential class size for certification purposes. Plaintiff acknowledges that without the reply report, the class sizes suggested in the initial report may be inadequate for Rule 23 purposes. This is not the purpose of a reply report. Indeed, a reply is not a "redo" and should not allow a party to press the reset button on analyses, findings, and conclusions. *See Crowley v. Chait*, 322 F. Supp. 2d 530, 550 (D.N.J. 2004)

Yet, that is precisely what Dr. Lang's reply does here. Dr. Lang advances new opinions and new analyses in this report, most significantly regarding the number of white employees involuntarily terminated. ECF No. 139-5 at 16. But Dr. White's rebuttal does not address the number of terminations at all. *See generally* ECF No. 139-4. Accordingly, Dr. Lang's supposed reply brief is improper. *See Withrow*, 967 F. Supp. 2d at 1001 (finding that reply reports addressing issues not raised on rebuttal to be improper). Consequently, the Court strikes it. *See Haskins*, 2013 U.S. Dist.

7

LEXIS 138041, at *7.

### B. Supplemental Report Under Rule 26(e)

Even assuming *arguendo* Dr. Lang's reply report were proper under Rule 26(a) (as set forth *supra* it is not), it would still need to be stricken under Rule 26(e). Plaintiff's arguments to the contrary are unpersuasive.

Plaintiff asserts that Dr. Lang supplemented his reply report to correct for a mistake made in the population sets in his original report, pursuant to Rule 26(e). Dr. Lang contends that the original population sets mistakenly relied on data provided by Defendant later in discovery. Dr. Lang maintains that he believed, at the time, that those data sets were cumulative, including data produced earlier in discovery. Opp. Br. at 5. However, the data was not cumulative, which, according to Plaintiff, caused subsets of employee populations left out of the original population sets. *Id.* Plaintiff's position on this issue is contrary to law.

"Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *In re Asbestos Prods. Liability Litig. (No.VI),* F.R.D. 424, 425 (E.D. Pa. 2013) (internal quotations and citations omitted). Instead, courts interpret Rule 26(e) to permit supplementation in instances where an expert "receives newly produced information after submitting his expert report or when an expert discovers numerical errors in his or her calculations." *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 2019 U.S. Dist. LEXIS 23654, at *10 (D.N.J. Feb. 13, 2019) (internal quotations and citations omitted). Rule 26(e) thus "creates a duty not a

right." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).

What Dr. Lang attempted to do here is not a situation where an expert sought to remedy a small mistake or miscalculation based on "newly *produced* information." *Ezaki Glico Kabushiki Kaisha*, 2019 U.S. Dist. LEXIS 23654, at *10 (emphasis added). Plaintiff concedes as much in his briefing, when Plaintiff expresses concern over Dr. Lang's initial report and statistics, stating that they may be insufficient to "establish[] Rule 23's numerosity element when moving for class certification." Opp. Br. at 25. From this statement, it is evident that Plaintiff intended to rely on Dr. Lang's reply report to demonstrate this critical component to establish the numerosity requirement of Rule 23. But it is axiomatic that a supplemental report "cannot be used to correct a party's case-in-chief." *Haskins*, 2013 U.S. Dist. LEXIS 138041, at *7. As such, Defendant cannot use Rule 26(e) to remedy the inadequacies of Dr. Lang's initial report. In short, because Dr. Lang's reply report fails to qualify as a supplemental report under Rule 26(e), it must be stricken.[1]

## IV.   CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this 23rd day of December, 2025

---

[1] The Court declines to address the Parties' Rule 37 arguments because it has already deemed the report to be an improper reply, which must be stricken.

**ORDERED** that the Defendant's Motion to Strike the Reply Report of Plaintiff's Statistical Expert David Lang, Ph.D. (ECF No. 135) is GRANTED; and it is further

**ORDERED** that the Reply Report of Plaintiff's Statistical Expert David Lang, Ph.D. is hereby stricken from the record; and it is further

**ORDERED** that the Clerk is to terminate ECF No. 135.

s/ Justin T. Quinn
HON. JUSTIN T. QUINN
United States Magistrate Judge